**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LINDA BONNIE SCRIPNICENCU,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| | : | **No. 19-5280** |
| **v.** | : | |
| | : | |
| **LSF9 MASTER PARTICIPATION TRUST,** | : | |
| **et al.** | : | |
| **Defendants.** | : | |
| | : | |

**McHUGH, J.**                                                    **August 18, 2020**

**MEMORANDUM**

This case is one of a series of similar actions filed by the same attorney alleging a variety

of claims following mortgage actions in state court.  As with the other cases, the claims here are

pleaded in vague terms against multiple defendants with little regard for the Rules and little

grasp of the controlling principles of law.  The complaint here is now on its third iteration, with

no material improvement in form or substance.  Having carefully considered the parties'

submissions, Defendants' Motion to Dismiss will be granted, with leave to amend denied.

I.      **Relevant Background**

A.  **The Pleaded Facts[1]**

In early 2005, Plaintiff Linda Bonnie Scripnicencu and her husband, George, obtained a

mortgage on their home.  (Br. in Supp. of Defs.' Mot. to Dismiss. Ex. C., at 8, ECF 19-6.)  As is

---

[1] To better contextualize the events relevant to my adjudication of Plaintiff's claims, the pleaded facts of
the Second Amended Complaint are augmented by the relevant facts set forth in the Supplemental
Opinion of the Bucks County Court of Common Pleas in the underlying foreclosure action.  That opinion
satisfies several of the criteria under which a district court may reference materials extraneous to the
pleadings.  *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion
to dismiss, we may consider documents that are attached to or submitted with the complaint and any

typical in the industry, the mortgage was assigned multiple times.  Initially, Mr. Scripnicencu executed and delivered the mortgage to Mortgage Electronic Registration System, Inc. ("MERS"), acting as nominee for a different company.  (*Id*.)  In February 2010, MERS assigned the mortgage to SunTrust Mortgage, Inc.  (*Id*. at 9.)  Thereafter, SunTrust assigned the mortgage to Federal National Mortgage Association ("FNMA").  FNMA chose Seterus, Inc. to act as its authorized loan servicer.[2]

Plaintiff alleges that sometime prior to November 1, 2013, she and her husband tried unsuccessfully to obtain assistance from SunTrust regarding their mortgage payments.  (Second Amended Complaint ("SAC") ¶¶ 1-4.)  Then, in late-2013 or early-2014, the Scripnicencus received communication from the loan servicer, Seterus, indicating that their mortgage payment of $1,900 per month was $1,000 lower than it should have been.  (SAC ¶¶ 15-16.)  Nevertheless, Seterus sent the Scripnicencus a letter via FedEx, stating that it would accept a payment of $1,600 per month, or $300 less than the amount they were already being undercharged. (SAC ¶ 19.)  Shortly thereafter, George Scripnicencu passed away.  (SAC ¶ 20.)

Seterus made multiple attempts to contact Plaintiff by phone, including on the morning her husband passed away.  (SAC ¶¶ 21-25.)  Once Seterus was able to speak with Plaintiff, the company inquired whether she intended to stay in her home.  (SAC ¶ 24.)  Based on Seterus's initial communication about the discrepancy in mortgage payments, Plaintiff harbored strong enough misgivings about the company's ability to service her mortgage that she retained the

---

matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.")  (cleaned up).

[2] The moving Defendants aver that Nationstar Mortgage LLC d/b/a Mr. Cooper became the successor by merger to Seterus, Inc., and they further note that Plaintiff added Nationstar as a party when filing the Second Amended Complaint.  (ECF 19-1, at 1.)  Given the lack of clarity in Plaintiff's allegations, the opinion endeavors to refer to each entity as appropriate.

services of attorney Robert Birch in May 2014.  (SAC ¶¶ 29-31.)  Birch instructed her not to make any payments until he secured a payment arrangement with Seterus.  (SAC ¶ 35.)  Birch also advised Plaintiff to obtain County records to show that she was a signer on the mortgage, which she did.  (SAC ¶¶ 32-33.)

On June 25, 2014, Plaintiff's lender, FNMA, filed a mortgage foreclosure action in the Bucks County Court of Common Pleas.  (ECF 19-6, at 9.)  Once the action was filed, Plaintiff avers that she sought weekly updates from Birch on the progress of the case, and he informed her that he had nothing to report because the case was moving slowly.  (SAC ¶¶ 36-37.)  For more than two years, Plaintiff made no payments on the mortgage as the foreclosure action wended its way through the court system.  (SAC ¶¶ 35-38.)  Then, in April 2016, FNMA moved for summary judgment on its claims in the amount of $244,522.38, and a response was filed on Plaintiff's behalf just over a month later.  (ECF 19-6, at 9.)  The Court of Common Pleas entered summary judgment in favor of FNMA on August 18, 2016, (*Id*.), which Plaintiff avers she learned of by letter a short time later, (SAC ¶ 38.)

Understandably upset, Plaintiff contacted Birch to inquire about the judgment entered against her, and Birch told her that he did not receive the court's order—likely because he had relocated his office around the same time.  (SAC ¶¶ 40-41.)  When pressed about how and why Birch had failed to keep judgment from being entered against her, Birch allegedly told Plaintiff that he had made no guarantees about the outcome of her case, and it was her fault that the judgment was entered because she failed to pay the mortgage for more than two years. (SAC ¶¶ 42-44, 49.)  Plaintiff also avers she conducted research online about the foreclosure action and discovered that Birch made "several errors in the case."  (SAC ¶ 45.)

Plaintiff appealed the trial court's decision to the Superior Court of Pennsylvania but failed to file necessary components with the trial court first, the practical result being the Superior Court remanded the case to the trial court to reach the merits of the appeal and file a supplemental opinion.[3]  (ECF 19-6, at 11.)  On June 16, 2017, the Court of Common Pleas issued its supplemental opinion, which weighed each of Plaintiff's allegations of error, found them without merit, and concluded that summary judgment had been properly granted in favor of FNMA.  (*Id.* at 17.)  The Superior Court affirmed the trial court's judgment on August 8, 2017.  (*Id.* at 7.)

After the judgment was affirmed, Plaintiff alleges that she filed for bankruptcy to avoid a Sheriff's sale of her home and secured a mortgage modification with the help of her current counsel, Joshua Thomas.  (SAC ¶¶ 52-53.)  Under the new agreement, the term of the mortgage was extended until April 2058, the principal amount increased from $205,348.45 to $270,729.44, and Plaintiff's monthly payment was set at $1,543.63 per month—slightly less than the amount she paid before entering default.  (SAC ¶¶ 54-56; Loan Modification Agreement, Br. in Supp. of Defs.' Mot. to Dismiss Ex. E, at 3, ECF 19-8.)

Based upon the new agreement, Plaintiff secured dismissal and vacatur of the trial court judgment.  (SAC ¶¶ 60-61.)  Later, however, Plaintiff alleges Defendant Caliber advised her of a $29,000 deficit in escrow funds and other arrearages on the account, and, as a result, her

---

[3] Based on the Supplemental Opinion, Plaintiff appears to have retained her current counsel, Joshua Thomas, to represent her in the faulty appeal, and the trial court took issue with Thomas's repeated failures to observe the procedural rules applicable to Plaintiff's case.  (ECF 19-6, at 11.)  For example, the trial court notes that counsel failed not once, but twice, to file the required Statement of Matters Complained Of, and he appears to have made misrepresentations to the court about having done so.  (*Id.*)  Moreover, the court also took note of counsel's "failure to follow repeated instructions" given to him by a different judge in the Bucks County Court of Common Pleas as well as Judge Jerome Simandle of the United States District Court for the District of New Jersey.  (*Id.* at 11.)

payments increased to as high as $1,875.89 per month from October 2019 to January 2020, finally settling at approximately $1,606.00 per month.  (SAC ¶¶ 68-75.)  Plaintiff alleges that on November 1, 2019, Shellpoint Mortgage Servicing became the loan servicer, but Caliber continued to accept her payments.  (SAC ¶ 76.)

**B.  Relevant Procedural History**

Plaintiff has been granted multiple accommodations by this Court.  Plaintiff filed her initial complaint in this Court on November 8, 2019.  (ECF 1.)  Because Plaintiff secured a waiver of service filed on March 17, 2020, the moving Defendants' response to the initial complaint was due by May 18, 2020.  (ECF 4.)  The moving Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on April 16, 2020.  (ECF 5.)  Two weeks later, Plaintiff sought an extension of time to respond to the motion to dismiss, (ECF 9), which the Court granted on May 1, 2020, (ECF 10.)

Plaintiff filed an amended complaint on May 7, 2020, (ECF 11), prompting the Court to deny the first motion to dismiss as moot on May 8, 2020, (ECF 12.)  Ten days later, the moving Defendants filed a second motion to dismiss.  (ECF 13.)  Two weeks after the response to the motion was due, Plaintiff requested a second extension of time to respond to the pending motion. (ECF 14.)  The Court granted Plaintiff's request the same day.  (ECF 15.)  Plaintiff filed the Second Amended Complaint on June 22, 2020.  (ECF 16.)  On June 30, 2020, the Court denied the moving Defendants' pending motion to dismiss and Plaintiff's request for extension of time as moot.  (ECF 18.)  In response to the Second Amended Complaint, on July 6, 2020, Defendants filed the Motion to Dismiss now before the Court.  (ECF 19.)  Plaintiff opposed the Motion in a filing dated July 20, 2020, (ECF 20), to which Defendants filed a reply on August 3, 2020, (ECF 21.)

Accordingly, the matter has now been fully briefed and is ripe for a decision.

II.      **Standard of Review**

In this Circuit, motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) are governed by the well-established standard set forth in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

III.     **Discussion**

The jumbled nature of the Second Amended Complaint makes it difficult to determine the substance of Plaintiff's allegations.  To the extent I can decipher them, the allegations seem to hinge on a series of misrepresentations and deceptive conduct in which Defendants are purported to have engaged.  But the Complaint suffers from two major defects:  it fails throughout to distinguish between the moving Defendants when alleging misconduct, and, when closely analyzed, it fails to state a claim against any of them.  I will address each count of the Second Amended Complaint applicable to the moving Defendants in turn.

A.  **Plaintiff fails to allege a violation of Pennsylvania consumer protection law.**

In Count One of the Second Amended Complaint, Plaintiff alleges that Defendants violated the Unfair Trade Practices and Consumer Protection Law ("UTPCPL").  She claims that "[t]he actions of the Defendants, individually and/or jointly, were performed in direct contradiction to their promises of superior services and conduct, but instead for their own financial self-interests, in detriment to the rights and position of the Plaintiff."  (SAC Count One ¶ 8.)[4]  Plaintiff further asserts Defendants' purported conduct is actionable under the "catchall" provision of the statute, and she seems to allege that Defendants' actions were deceptive, not fraudulent.

_____

[4] Because the Second Amended Complaint fails to consecutively number its paragraphs, and restarts the numbering in each of its counts, this opinion refers, where necessary, to the applicable count and the numbered paragraph within it.

Defendants respond that Plaintiff points to no deceptive acts giving rise to liability and that she further fails to plead justifiable reliance on any of the Defendants' actions.  I agree.

The UTPCPL prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  73 Pa. Stat. Ann. § 201-3.  To bring a claim under the UTPCPL, a plaintiff must plead "(1) ascertainable loss of money or property, real or personal, (2) as the result of the defendant's prohibited conduct under the statute."  *Stone v. JPMorgan Chase Bank, N.A.*, 415 F. Supp. 3d 628, 633 (E.D. Pa. 2019) (citing *Kaymark v. Bank of America, N.A.*, 783 F.3d 168, 180 (3d Cir. 2015)) (quotations omitted).  Additionally, the Third Circuit "requires that a consumer bringing a claim under the UTPCPL prove justifiable reliance upon the defendant's wrongful conduct."  *Id*. at 633-34 (citing *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 221 (3d Cir. 2008)) (quotation marks omitted).

Based on the pleaded facts, I conclude that Plaintiff fails to satisfy the required elements for a UTPCPL claim.  As an initial matter, the facts do not show that Plaintiff suffered an ascertainable loss.  Plaintiff admits that she did not make any mortgage payments for more than two years, allegedly at the direction of the prior counsel, Robert Birch.  She also admits that the mortgage company instituted a foreclosure action against her and successfully obtained summary judgment in its favor.  Despite that, the mortgage company nonetheless entered into a loan modification with Plaintiff to allow her to remain in her home.  Whatever Plaintiff's feelings about the favorability of the modification, she did not suffer any ascertainable loss by entering the agreement.  To the contrary, she enjoyed the net benefit of retaining a place to live.

Assuming for the sake of argument Plaintiff suffered an ascertainable loss, she fails to plead facts that show the moving Defendants engaged in any deceptive conduct.  Plaintiff's only substantive factual allegation to bolster the claim is that Defendants did not live up to "promises

of superior services and conduct" they allegedly made to her.  Even if that vague representation were actionable, Plaintiff still fails to plead what those promises were, who made them, that the promises were deceptive, and that she relied upon them to her detriment.

On one level, Plaintiff did receive "superior services and conduct" throughout the events alleged here.  The mortgage servicer alerted Plaintiff to a discrepancy that resulted in Plaintiff and her husband being charged $1,000 less per month than they should have been.  After doing so, the servicer then offered to reduce the mortgage by an additional $300 to accommodate Plaintiff's financial difficulties.  As previously stated, Plaintiff admits that even after this accommodation, she failed to pay the mortgage for more than two years.  Once Plaintiff entered default and the mortgage company received summary judgment, it could have pursued the foreclosure action to its logical conclusion and taken her home—but it did not.  Instead, Plaintiff was accommodated again with a loan modification that allowed her to remain in her home.

To the extent Plaintiff's allegations center on the terms of that modification, none of the facts demonstrate that the moving Defendants engaged in any deceptive conduct in connection with that agreement.  Plaintiff points to the fact that the loan modification increased the principal balance, extended the length of the mortgage, and required higher payments due to a deficiency in her escrow account.  I am not persuaded that any of these things constitute deceptive conduct since her nonpayment of the mortgage necessitated all of them.  Furthermore, Plaintiff admits that her current attorney, Joshua Thomas, negotiated the loan modification, and it is difficult to comprehend how Plaintiff can now claim *ex ante* that the modification constitutes deceptive conduct on Defendants' part.

Given these facts, I conclude that the Second Amended Complaint fails to allege a violation of the UTPCPL, and I will dismiss that claim.

**B.  Plaintiff fails to state a claim for breach of contract.**

Plaintiff alleges that "[a]t all times relevant and material hereto the Defendants did breach the contractual terms of the loan/note (contract) by engaging in deceptive and fraudulent practices as hereinbefore set forth." (SAC Count Two ¶ 6.)  Moving Defendants respond that Plaintiff fails to allege that any of the Defendants were parties to the original mortgage, and to the extent her claim centers on the loan modification, she has failed to allege facts showing any of the Defendants breached its terms.  I agree with Defendants.

"Under Pennsylvania law, 'a plaintiff wishing to proceed with a breach of contract action must establish (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages.'" *Landau v. Viridian Energy PA LLC*, 223 F. Supp. 3d 401, 408 (E.D. Pa. 2016) (quoting *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003)).

As a threshold matter, the Second Amended Complaint fails to attach the underlying mortgage documents or plead facts that indicate who was a party to the agreement or the agreement's essential terms, despite the fact that the pleading specifically references the document.  Under Federal Rule of Civil Procedure 8(a), "a plaintiff [may] assert the existence of an express, written contract either by setting it forth verbatim in the complaint, or the plaintiff may attach a copy as an exhibit, or plead it according to its legal effect."  *Pierce v. Montgomery Cty. Opportunity Bd., Inc.*, 884 F. Supp. 965, 970 (E.D. Pa. 1995) (cleaned up).  The allegations of the Second Amended Complaint satisfy the Rule only with respect to the loan modification.

Accordingly, the only agreement currently before the Court is the loan modification, and I will proceed to analyze Plaintiff's claims as it relates to that contract.[5]

Except under specific and limited circumstances, only a signatory to a contract is bound by its terms.  *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 194 (3d Cir. 2001).  Thus, as to the modification, I agree with moving Defendants that because Caliber is the only Defendant that is party to the agreement and Plaintiff provides no basis to assert liability against the non-signatory defendants, I must dismiss the claim as to the latter group.  And I further agree that as to Caliber, Plaintiff's claim fails because she does not allege any way in which Caliber breached the contract.  Plaintiff points to the additional principal amount and changes in her payments due to the escrow deficiencies as evidence that the agreement was breached.  But those allegations do not support her claim because the agreement granted Caliber the right to make such adjustments.

Moreover, Plaintiff's allegation that Defendants breached the agreement "by engaging in deceptive and fraudulent practices as hereinbefore set forth" also fails for the separate reason that it is an attempt to bootstrap her breach of contract claim on the basis of her legally insufficient claim under the UTPCPL.  *See Galdieri v. Monsanto Co.*, 245 F. Supp. 2d 636, 650 (E.D. Pa. 2002)[6] (rejecting Plaintiff's attempt to bootstrap a contract claim into a fraud claim).  Even if

---

[5] The Second Amended Complaint purports to attach the loan modification but fails to do so.  (SAC ¶ 52.)  Nevertheless, the moving Defendants attach the document to their Motion.  Because the modification is integral to the claims before me and because the Second Amended Complaint refers to it, I will consider the agreement.  *Buck*, 452 F.3d at 260.

[6] Although *Galdieri*'s analysis concerned itself with the application of Pennsylvania's "gist of the action doctrine," which bars plaintiffs from recasting tort claims as breach of contract claims, it has logical force here given the court's rejection of the plaintiff's attempt to use the breach of contract claim as a way to allege fraud, coupled with the gist of the action doctrine's underlying purpose to keep tort and contract claims separate.

bootstrapping the claims provided a viable path to relief, the breach of contract claim would still fail because, as explained above, Plaintiff has not alleged facts demonstrating that Caliber—or any of the moving Defendants—engaged in deceptive conduct within the meaning of the UTPCPL.

I will therefore dismiss Plaintiff's breach of contract claim.[7]

### C. Plaintiff fails to state a claim for unjust enrichment against the moving Defendants.

In a nutshell, Plaintiff alleges that Defendants have engaged in misconduct and misrepresentations calculated "to receive a benefit through the sale of Plaintiff's home" by delaying a resolution of her mortgage issues.  (SAC Count Four ¶ 15.)  As is true throughout, the Second Amended Complaint fails to distinguish which of the Defendants engaged in the purported misconduct here.[8]  Nevertheless, based on the pleaded facts, I conclude that Plaintiff has failed to state a claim for unjust enrichment against any of the moving Defendants.

In Pennsylvania, a plaintiff states a claim for unjust enrichment by pleading facts that show "(1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value."  *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 180 (3d Cir. 2008) (quoting *Limbach Co. LLC*

---

[7] The Second Amended Complaint also appears to plead a breach of the implied covenant of good faith and fair dealing.  There is no need to address this, because "under Pennsylvania law, a 'claim for breach of the implied covenant of good faith and fair dealing is subsumed in a breach of contract claim.'"  *Burton v. Teleflex Inc.*, 707 F.3d 417, 432 (3d Cir. 2013) (quoting *LSI Title Agency, Inc. v. Evaluation Servs., Inc.*, 951 A.2d 384, 392 (Pa. Super. Ct. 2008)).

[8] As noted later in the opinion, the moving Defendants point out in their Motion that this section of the Complaint—and others—appear copied word for word from the *Meyers* action attached as an exhibit to the Motion to Dismiss.  (ECF 19-1, at 2 n.2.)  The "copy and paste" nature of the draftsmanship makes it hard to know if the allegations even apply to the conduct at issue or what the allegedly inequitable conduct was.

*v. City of Philadelphia*, 905 A.2d 567, 575 (Pa. Commw. Ct. 2006)).  A plaintiff must therefore allege the defendant "either wrongfully secured or passively received a benefit that it would be unconscionable for her to retain."  *Id*. (quoting *Torchia v. Torchia*, 499 A.2d 581, 582 (Pa. Super. Ct. 1985)).  But the alleged facts must do more than show "the defendant may have benefited in some way from the disputed conduct."  *Id*. at 181 (quoting *Walter v. Magee–Womens Hosp.*, 876 A.2d 400, 407 (Pa. Super. Ct. 2005)).

"Under Pennsylvania law, a plaintiff may plead breach of contract and unjust enrichment claims in the alternative only where an express contract cannot be proven."  *Landau*, 223 F. Supp. 3d at 410 (cleaned up).  Courts will therefore permit alternative claims of unjust enrichment to proceed in breach of contract actions "where there is a [doubt] as to the validity of the contract in question."  *Id*. (cleaned up).  Conversely, unjust enrichment claims are barred where "no dispute exists as to whether [there is] an enforceable contract."  *Id*. (cleaned up).

Plaintiff fails to state a viable unjust enrichment claim against any of the moving Defendants, but the reasons differ as to each.  First, the claim fails as to Caliber because Caliber is a party to the loan modification.  Plaintiff does not dispute the existence of the modification or Caliber's status as a party, and she further provides no meaningful dispute as to the validity of the agreement's terms.  Plaintiff's claim therefore must be dismissed as to Caliber.

Plaintiff's claim also fails as to the other moving defendants because the substance of Plaintiff's allegations does not support an unjust enrichment claim against them.  Plaintiff alleges that the moving Defendants sought "to receive a benefit through the sale of Plaintiff's home," and that they sought to accomplish that outcome by dithering on the resolution of her issues.  But this allegation fails to carry the day for several reasons.  First, as discussed with respect to the UTPCPL claim, Plaintiff points to no deception or misconduct on the part of the moving

Defendants.  Second, despite obtaining a judgment for foreclosure in state court, Defendants consented to withdrawal and vacatur of that judgment, thus denying themselves the benefit of obtaining Plaintiff's home.  Third, the facts demonstrate that far from delaying resolution of her issues, the loan servicer preemptively confessed its error in computing her payments, then it further *reduced* those payments to accommodate her financial situation.  Finally, to the extent the loan modification meaningfully improved the position of any parties now before the Court, it did so as to Plaintiff, not the moving Defendants.  Plaintiff entered that agreement voluntarily.[9]  And had the foreclosure action not been withdrawn and the modification entered, Plaintiff would have been thrown out of her home and Defendants would likely have had to sell her home at a loss.

Plaintiff therefore fails to state an unjust enrichment claim against the moving Defendants.

### D.  Plaintiff fails to state a claim for negligence.

Plaintiff alleges that "Defendants failed to conform to the required standard of conduct owed to [her]" as evidenced by Defendants' "failure to properly handle the modification and improper Foreclosure action as well as the overcharges and subsequent issues."  (SAC Count Five ¶¶ 16-17.)  The moving Defendants respond that Plaintiff's negligence claim is barred by the statute of limitations as to Mr. Cooper/Nationstar, and the negligence claim generally fails because Plaintiff has failed to allege that defendants violated a duty of care.

---

[9] Plaintiff alleges that "[w]hile she accepted [the] modification, it was essentially under duress, as the other choice was to lose her home."  (SAC ¶ 57.)  This allegation does little to bolster her claims.  The Third Circuit has explained that, under Pennsylvania law, a party raising economic duress as a defense to enforcement of a contract must point to an unlawful act that induced them to enter into the contract. *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 911 (3d Cir. 1985).  Additionally, the defense is unavailable to a party that brought the alleged financial distress upon themselves or had an attorney available to them when entering the agreement.  *Id*. at 911-12.  Here, Plaintiff points to no such unlawful act, she admits the default and ensuing foreclosure occurred because she did not pay her mortgage for more than two years, and Plaintiff pleads that her attorney negotiated the agreement on her behalf.

In Pennsylvania, the statute of limitations for a negligence claim is two years.  42 Pa. Cons. Stat. Ann. § 5524; *Gardner v. State Farm Fire & Cas. Co.*, 544 F.3d 553, 561 (3d Cir. 2008).  The moving Defendants stress that, based on Plaintiff's allegations, her last interaction with Mr. Cooper/Nationstar (then acting as Seterus) was sometime in 2014, which places the statute of limitations sometime in 2016.  In Defendants' view, because Plaintiff did not file this action until 2020, the statute of limitations bars the negligence claim as to Mr. Cooper/Nationstar.  Although this argument carries substantial weight, given the shoddy pleading of the Second Amended Complaint, it is difficult to discern the timeline.  I will therefore proceed to the merits of the negligence claim.

Defendants further assert that Plaintiff fails to state a negligence claim because she does not adequately plead the breach of a legally cognizable duty other than the obligations created by the contract.  Defendants are correct.  To make out a claim of negligence under Pennsylvania law, a plaintiff must allege facts demonstrating that "(1) defendant owed her a duty, (2) defendant breached that duty, (3) a causal relationship between the breach and her injury, and (4) damages she incurred."  *Bradley-Williams v. Agency Ins. Co. of Maryland, Inc.*, 282 F. Supp. 3d 882, 884 (E.D. Pa. 2017).

But Pennsylvania's economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract."  *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir. 1995).  As the Court of Appeals has explained, plaintiffs should be limited to a contractual, rather than tort-based, remedy "when loss of the benefit of a bargain is the plaintiff's sole loss."  *Id.*  The economic loss doctrine therefore bars any cause of action "for negligence that results solely in economic damages unaccompanied by physical injury or property damage."  *Excavation Technologies, Inc. v. Columbia Gas Co. of*

14

*Pennsylvania*, 985 A.2d 840, 841 n.3 (Pa. 2009) (cleaned up).  Because that is so, a plaintiff may avoid application of the doctrine only by articulating "harm that is distinct from the disappointed expectations evolving solely from an agreement."  *Doe v. Trustees of Univ. of Pa.*, 270 F. Supp. 3d 799, 829 (E.D. Pa. 2017) (cleaned up).

As with Plaintiff's breach of contract and unjust enrichment claims, the analysis of Plaintiff's negligence claim differs as to the parties against whom it is asserted.  Plaintiff's negligence claim turns on an alleged violation of the "required standard of conduct owed to [her]," and she cites as evidence of that purported violation Defendants' handling of the loan modification and foreclosure action as well as the alleged "overcharges and subsequent issues." (SAC Count Five ¶¶ 16-17.)  To start, Plaintiff's relationship with Defendant Caliber is grounded in the loan modification, which Plaintiff does not dispute is a binding agreement between them. Accordingly, that relationship implicates the economic loss doctrine, which bars any cause of action for negligence resulting solely in economic damages.  Plaintiff does not allege that Caliber's alleged tortious conduct caused her any physical injury or damaged her property in any way.  Rather, as applicable to Caliber, Plaintiff alleges negligence due to the "overcharges and subsequent issues" that arose after she entered the modification.  But as set forth above, Caliber's conduct with respect to those things was in line with its rights under the modification, and the terms providing it the ability to act as it did were spelled out in the agreement.  That being the case, Plaintiff's claim against Caliber is barred under the economic loss doctrine because she alleges no "harm that is distinct from the disappointed expectations evolving solely from an agreement."  *Doe*, 270 F. Supp. 3d at 829.

Plaintiff's claims against the other moving Defendants fare no better.  Fundamentally, in order to make out a claim of negligence, Plaintiff must plead that the defendant owed her a duty

of care.  But Plaintiff does not set forth or describe the nature of the duty Defendants purportedly owed her, nor plead that Defendants had a special relationship with her that created some duty. Undoubtedly, that is because Plaintiff would be unable to cite authority for such duties.  To the extent the she alleges that the relevant duty was to act properly in the creation and execution of the loan modification or the foreclosure action, Plaintiff pleads no facts showing that the moving Defendants acted negligently with respect to any of those matters.  She also pleads no facts that distinguish which of the moving Defendants, if any, were involved in efforts to foreclose upon her home, or how that would give rise to a negligence action.

Accordingly, Plaintiff fails to state a claim against the other moving defendants for negligence.

### E.   Plaintiff fails to state a claim for relief under RESPA because her claim does not meet basic pleading standards.

As an initial matter, I am troubled  by Count Six of the Second Amended Complaint because it styles the claim as one for "emotional distress pursuant to the Fair Debt Collection Practices Act," but it goes on to allege in conclusory fashion that the conduct described generally in the Second Amended Complaint gives rise to an emotional distress claim under the Real Estate Settlement Procedures Act of 1974 ("RESPA").  Even more troubling is the fact that there is no substance whatsoever to Plaintiff's RESPA claim, and her filing fails to meet even the basic requirements of pleading under Federal Rule of Civil Procedure 8.

Rule 8 requires that a pleading provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The Supreme Court has explained that the purpose of the Rule is to "give the defendant fair notice of what the claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).  Accordingly, as the Supreme Court has cautioned, "a plaintiff's obligation to provide the

16

grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. (cleaned up).  To survive a Rule 12(b)(6) motion, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level." *Id*. (cleaned up).

That is clearly not the case with respect to the RESPA allegation here.  RESPA is a sprawling "consumer protection statute that regulates the real estate settlement process." *Jones v. ABN Amro Mortg. Grp., Inc.*, 606 F.3d 119, 124 (3d Cir. 2010).  As I explained in a previous decision, some of RESPA's labyrinthine provisions offer injured customers a private right of action through which to vindicate their claims, while others do not. *Joussett v. Bank of Am., N.A.*, 2016 WL 5848845, at *5 (E.D. Pa. Oct. 6, 2016) (comparing various provisions of RESPA to determine whether private rights of action exist under those invoked by plaintiff).  Here, despite RESPA's expansive scope, Plaintiff does not direct me to the specific portion or portions of the statute that the moving Defendants are alleged to have violated.  Instead, the Second Amended Complaint dedicates six paragraphs to a discussion of case law—none from our Court of Appeals—ostensibly standing for the proposition that a plaintiff may collect damages for emotional distress under the statute, but never discussing whether and how the moving Defendants violated its provisions.  Having wholly failed to provide any allegations of fact to support a RESPA violation, I will dismiss this claim against all Defendants in the action.

### F.  Plaintiff's claim of unlawful foreclosure is not cognizable, and she fails to state a claim for a violation of the Dragonetti Act or common law abuse of process.

Plaintiff next alleges that "[s]pecifically, by refusing a loan modification initially, after one had been offered, and then failing to provide one for years to accumulate new charges, is clearly an intentional act to merely accrue substantial new charges in bad faith and more than sufficient actions to show the Foreclosure was also commenced in accordance with either the

17

Dragonetti Act or at least common law abuse of process." (SAC Count Seven ¶ 9.) In response, the moving Defendants contend no cause of action exists for "unlawful foreclosure" and that Plaintiff's claims in the alternative for violation of the Dragonetti Act and abuse of process must be dismissed. In support of this contention, the moving Defendants point me to *Abdul-Rahman v. Chase Home Fin. Co., LLC*, 2014 WL 3408564, at *4 (E.D. Pa. July 11, 2014) (Restrepo, J.).

As an initial matter, I agree with the moving Defendants there is no cognizable claim under Pennsylvania law for unlawful foreclosure, and Plaintiff offers no authority to the contrary. I will therefore proceed only to a discussion of Plaintiff's claims under the Dragonetti Act and common law abuse of process.

The Dragonetti Act is a statutory provision that imposes tort liability "when a party institutes a lawsuit with a malicious motive and lacking probable cause" and the party has perverted "legal process to benefit someone in achieving a purpose which is not an authorized goal of the procedure in question." *McNeil v. Jordan*, 894 A.2d 1260, 1274 (Pa. 2006). "In addition to malicious motive and lack of probable cause, a party must plausibly allege that '[t]he proceedings have terminated in favor of the person against whom they are brought.'" *Abdul-Rahman*, 2014 WL 3408564, at *4 (quoting 42 Pa. Cons. Stat. § 8351(a)(2)).

Based on the facts pled in the Second Amended Complaint, I conclude Plaintiff fails to state a claim for violation of the Dragonetti Act. Judge Restrepo's decision in *Abdul-Rahman* insightfully explains why. In *Abdul-Rahman*, after determining the Plaintiff was in default, the mortgage companies filed a foreclosure action in the Philadelphia Court of Common Pleas, but they later withdrew the action before securing any judgment when the Plaintiff agreed to a modification. 2014 WL 3408564, at *4. Judge Restrepo concluded that, under Pennsylvania law, the withdrawal pursuant to a compromise was not termination of the action in favor of the

plaintiff—the party against who the action had been brought—with the result that Plaintiff failed to state a claim under the Act.  *Id*.

The facts alleged here provide even less assistance to Plaintiff in asserting a Dragonetti Act claim because, unlike in *Abdul-Rahman*, FNMA received summary judgment in the trial court, which was affirmed on appeal, and it later consented to withdrawal and vacatur of the judgment in order to accommodate Plaintiff.  Plaintiff therefore cannot claim to have obtained judgment in her favor from the state court, and as such, she fails to state a claim under the Dragonetti Act.

Plaintiff's common law abuse of process claim is also deficient and must be dismissed. The Third Circuit has explained "the gist of an action for abuse of process is the improper use of process after it has been issued, that is, a perversion of it."  *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 304 (3d Cir. 2003) (cleaned up).  "A perversion of legal process occurs when a party uses the process primarily to accomplish a purpose for which the process was not designed."  *Id*. (cleaned up).  Thus, a plaintiff must allege that "that the defendant used legal process against the plaintiff in a way that constituted a perversion of that process and caused harm to the plaintiff."  *Id*.

Turning again to *Abdul-Rahman*, "a mortgage foreclosure action is an appropriate legal course when a borrower is in default," and it therefore cannot be said "that a foreclosure suit itself [is] the wrong process once the [mortgage company decides]—correctly or not—that [the plaintiff is] in default."  2014 WL 3408564, at *5.  Here, I first note that Plaintiff has not sued FNMA, the mortgage company that pursued the foreclosure action.  Even if she had, Plaintiff admits she defaulted on the mortgage after more than two years of nonpayment, and she does not dispute that foreclosure is a permissible means by which a mortgage company may seek relief in

that situation.  She also pleads no facts to suggest FNMA foreclosed on her home for any

purpose other than to secure its debt once she defaulted.  Thus, I agree with the holding of *Abdul-*

*Rahman* that, absent exceptional circumstances not pleaded here, a debtor cannot label a

mortgage company's foreclosure efforts an "abuse of process" where the mortgage company

pursued a remedy it was entitled to seek under the law.

### G.  Plaintiff's respondeat superior claim will be dismissed because it is not a freestanding cause of action.

Count Eight of the Second Amended Complaint must be dismissed because there is no

independent cause of action under Pennsylvania law for *respondeat superior.*  It is merely a legal

theory by which liability might be imposed, *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d

Cir. 2010), not a claim in its own right.  *See Care v. Reading Hosp. & Med. Ctr.*, 2004 WL

728532, at *13 (E.D. Pa. Mar. 31, 2004) (cleaned up) (noting *respondeat superior* operates to

impute liability "once an underlying theory of liability has been established.")  Courts in the

Circuit have therefore repeatedly rejected attempts to allege stand-alone *respondeat superior*

claims.  *See, e.g.*, *Robinson v. Folino*, 2017 WL 956648, at *5 (W.D. Pa. Mar. 13, 2017); *Black

v. Cmty. Educ. Centers, Inc.*, 2014 WL 859313, at *7 (E.D. Pa. Mar. 4, 2014); *Booker v.

National R.R. Passenger Corp.*, 880 F.Supp.2d 575, 586 (E.D. Pa. 2012); *Olschefski v. Red Lion

Area Sch. Dist.*, 2012 WL 6003620, at *6 (M.D. Pa. Nov. 30, 2012); *Ford Motor Credit Co. LLC

v. Maxwell*, 2012 WL 1677248, at *2 (M.D .Pa. May 14, 2012).

Moreover, Plaintiff asserts *respondeat superior* by way of a conclusory allegation that

LSF9 employed Caliber and Mr. Cooper, without alleging any supporting facts.  As the sole

basis for this assertion, the Second Amended Complaint pleads that "in their motion to dismiss,

Defendants' attorney admits to this relationship already, as such there can be no serious material

factual issue with the employer/employee relationship in this matter."  (SAC Count Eight ¶¶ 15-

16.)  But the Second Amended Complaint provides no reference to any portion of the moving

Defendants' previous submission where such an admission was made.

For these reasons, this claim must also be dismissed.

### H.  The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, and leave to amend will not be granted.

With no surviving federal claims, I decline to retain supplemental jurisdiction over the

state law tort claims that Plaintiff asserts in the Second Amended Complaint.  28 U.S.C.

§ 1367(c)(3).  If a district court has already dismissed all the claims invoking its original

jurisdiction, it "must decline to decide the pendent state claims unless considerations of judicial

economy, convenience, and fairness to the parties provide an affirmative justification for doing

so."  *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995) (citations omitted).

On the record here, there is no affirmative justification supporting the exercise of supplemental

jurisdiction over the remaining state law claims.[10]  This case is at an early stage, and the

remaining issues are strictly ones of state law.

Ordinarily, at this juncture, although I am dismissing the case in its entirety, I would do

so without prejudice to the refiling of the supplemental state law claims in state court, and I

would grant Plaintiff leave to amend her claims.  But I will not do so here.

The Third Circuit has noted that denial of leave to amend may be premised on "bad faith

or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by

amendments previously allowed, or futility of amendment."  *Lorenz v. CSX Corp.*, 1 F.3d 1406,

---

[10] Based on the Civil Cover Sheet of the original complaint, Plaintiff pleads that the basis of jurisdiction is federal question jurisdiction, which the allegations of the SAC reaffirm.  (Civil Cover Sheet, Plaintiff's Complaint, ECF 2, at 18; SAC ¶ 8.)  Furthermore, I note that Plaintiff and Defendant Robert Birch both appear to be citizens of Pennsylvania, and therefore no basis for diversity jurisdiction exists.  (SAC ¶¶ 1, 7.)  This buttresses my conclusion that it is proper to dismiss the supplemental state law claims that remain against Defendant Birch.

1414 (3d Cir. 1993).  To varying extents, each of the bases articulated in *Lorenz* guide my decision to dismiss the action with prejudice and without leave to amend.  Counsel requested and received multiple opportunities to amend Plaintiff's complaint, (ECF 9, 10, 14, and 15), ostensibly to cure deficiencies identified by the moving Defendants in their motions to dismiss, (ECF 5, 13, and 19.)  Even after two opportunities to amend the complaint, the Second Amended Complaint remains woefully deficient and, in several respects, fails to meet even the basic pleading standards required by Rule 8 and *Twombly*.  The pleading is replete with conclusory allegations that are unsupported by facts, and to the extent it makes factual allegations of misconduct, it does so by repeatedly lumping the Defendants together.  Moreover, the Second Amended Complaint also fails to meet basic standards of professionalism required for submissions to the Court, as it is riddled with typographic and numbering errors, and portions of it are clearly copied and pasted from complaints Plaintiff's counsel has filed in other cases. (*Compare* SAC Counts Four, Six, and Eight with *Meyers v. Caliber Home Loans, Seterus, Inc.,* No. 1:19-CV-596, M.D. Pa., Complaint Counts Three, Four, and Seven, ECF 1.)  All of this implicates the doctrine of futility.

Furthermore, to the extent that a review of pleadings under Rule 12 focuses on plausibility, there is nothing about the overall facts of this case that intuitively supports a cause of action.  Plaintiff's rendition of the baseline facts reveal that she was liable under a mortgage, did not make payments for a prolonged period of time, and was granted more than one accommodation, even to the point of a loan modification after an enforceable judgment was entered against her.  Having been given three attempts, Plaintiff's counsel has failed to unearth a valid claim lurking within the underlying facts.

And the case here forms part of the pattern of conduct for which Mr. Thomas is well-known in federal and state courts at both the trial and appellate levels:  failure to follow basic procedural rules, engaging in misconduct, bringing actions that are barred by prevailing doctrines applicable to the case, and a lack of candor when confronted about those issues.  Judge John E. Jones, III, of the Middle District of Pennsylvania, dismissed an almost identical complaint against two of the same defendants here and specifically admonished Thomas for the shoddy nature of his filings, noting that Mr. Thomas's "continued use of such poorly prepared filings and disregard for lack of subject matter jurisdiction and other court Rules may result in an Order to Show Cause why discipline should not be imposed and as to why he should not be enjoined from further filings in this Court as well."  *Meyers v. Caliber Home Loans, et al.*, 2019 WL 4393377, at *10 n.26 (M.D. Pa. Sept. 13, 2019).  Judge Jones further noted that he was "deeply troubled that Plaintiffs' counsel would so recklessly and cavalierly accuse various Defendants of fraud and misrepresentation in such a conclusory and unsubstantial manner."  *Id.*

My colleague Judge Joshua Wolson of the Eastern District of Pennsylvania has also observed Mr. Thomas's bad faith conduct in litigation, resulting in the imposition of sanctions. In the first of two related cases, Thomas neglected basic deadlines (resulting in his client's default); failed to answer discovery (resulting in his client's admission to their opponent's requests); dithered and eventually failed to respond to a motion for summary judgment; and, finally, moved untimely for reconsideration of the court's order granting summary judgment. *Jacovetti Law, P.C., et al. v. Shelton*, 2020 WL 1491320, at *1 (E.D. Pa. Mar. 27, 2020), *reconsideration denied*, 2020 WL 2556951 (E.D. Pa. May 20, 2020).  In the second case, Thomas failed to file a disclosure statement on behalf of one client as required by Fed. R. Civ. P. 7.1, *id.* at *2, and when confronted at a hearing about why he had failed to do so, Thomas "lied

to the Court about the reason for his actions, on the record and under oath," *id*. at *1.  Indeed, in

large part, Judge Wolson found Thomas to be unapologetic about his actions at the hearing.  *Id*.

at *3.  Thomas's actions therefore compelled Judge Wolson to impose sanctions[11] that included

(1) a monetary penalty of $1,600; (2) dissemination of Judge Wolson's opinion and order to

"every state bar and every federal court to which Thomas is admitted" as well as to Thomas's

clients; and (3) the issuance of a judicial reprimand.  *Id*. at *6-7.

It is clear that Thomas has brought before this Court the same substandard pleadings and

engaged in much of the same conduct that has troubled my colleagues on the bench throughout

the region.  This record reflects bad faith and dilatory motives, and I therefore have no hesitation

in dismissing this matter without prejudice and denying leave to amend.

---

[11] In the opinion, Judge Wolson notes Thomas's "long history of running afoul of courts in the Third Circuit," and he provides a thorough and detailed list of those incidents, *id*. at *3, which I briefly recite here to make plain the severity of Thomas's previous conduct:  *Bounasissi v. New York Life Ins. and Annuity Corp.*, 2016 WL 4697333, at *1 n.2 (D.N.J. Sept. 6, 2016) (Simandle, J.) (striking an improvidently filed amended complaint and emergency motions after Thomas, for the third time, "ignored his basic obligations under the Federal Rules of Civil Procedure in [the] case."); *Akinsanmi v. Nationstar Mortgage*, 2017 WL 2960579, at *2 (D.N.J. May 25, 2017) (Shipp, J.) (noting Thomas's failure to respond to an Order to Show Cause and requiring explanation as to why the case should not be dismissed involuntarily based on Thomas's "history of delays and failures to comply with the Court's orders."); *Hood v. Victoria Crossing Townhouse Ass'n*, 2019 WL 3336132, at *9 (D.N.J. July 25, 2019) (Kugler, J.) (dismissing case as clearly barred on three separate and serious bases, noting previous instances of filing such cases, and barring Thomas from filing new actions in the District of New Jersey without leave of court.); *Wright v. JP Morgan Chase Bank, N.A.*, 2019 WL 5587262, at *7-8 (D.N.J. Oct. 30, 2019) (Bumb, J.) (issuing a judicial reprimand and ordering Thomas to attend continuing legal education program about the rules of professional conduct—which Thomas missed); Order to Show Cause, *Edwards v. Wells Fargo Bank, N.A.*, Civ. No. 19-14409, ECF 7, at 1-2 (D.N.J.) (Hillman, J.) (noting correspondence from one plaintiff that he was unaware of the case and never met Thomas and ordering Thomas to show cause why the court should not refer him to the Chief Judge of the District of New Jersey for disciplinary action); *In re Thomas*, 612 B.R. 46, 65-68 (Bankr. E.D. Pa. 2020) (Frank, J.) (concluding Thomas intentionally filed an identical schedule on behalf of the debtor as he had in an earlier bankruptcy proceeding during which Thomas also represented her, and noting Thomas exhibited a "conscious disregard of his most basic duties as an attorney" and "evidence[d] a distinct lack of concern for the integrity of the bankruptcy system.")

**IV.     Conclusion**

       For the reasons set forth above, Defendants' Motion to Dismiss will be granted. An appropriate Order follows.

<u>/s/ Gerald Austin McHugh</u>
United States District Judge
